# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| **ROXIE ANN KUHNS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:15-cv-00430-AC |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————————— | ) | |

**ACOSTA, Magistrate Judge:**

Roxie Ann Kuhns ("plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Because the Commissioner's decision is not supported by substantial evidence, it is REVERSED and REMANDED for further proceedings consistent with this opinion.

## *Procedural Background*

Plaintiff filed her application for SSI on September 29, 2011, alleging disability as of September 28, 2009. (Tr. 12, 146-59.) The Commissioner denied her application initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ").

(Tr. 85-88, 96-100.)  An administrative hearing was held on July 24, 2013.  (Tr. 27-59.)  After the hearing, the ALJ issued an unfavorable decision on August 13, 2013, finding plaintiff not disabled.  (Tr. 12-21.)  The Appeals Council denied plaintiff's subsequent request for review, making the ALJ's decision final.  (Tr. 1-6.)  This appeal followed.

### Factual Background

Born in January, 1966, plaintiff was 45 years old on her filing date, and 47 years old at the time of the hearing.  (Tr. 20, 146-59.)  She obtained her GED in 2000, and has past relevant work experience as a shipping manager in electronics.  (Tr. 19, 31-32, 69.)  She was laid off from her job in 2000.  *Id.*  She alleges disability due to lymphoma, fibromyalgia, mass on her left lung, limited use of her left hand, asthma, and irritable bowel syndrome. (Tr. 166.)

### Standard of Review

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions."  *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability.  *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, the claimant must

demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant still can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 416.920(e). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work. *Id.* at 142; 20 C.F.R. § 416.920(e) & (f). If the Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. § 416.966.

\\\\\

\\\\\

Page 3 – OPINION AND ORDER

### *The ALJ's Findings*

The ALJ performed the sequential analysis. At step one, she found that plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 14.) At step two, the ALJ concluded that plaintiff had the following severe impairments: status post right shoulder SLP repair; fibromyalgia; chronic left hip pain; left hip bursitis; degenerative disc disease at L4-5, status post left small finger removal of deep hardware and extensor tenolysis; asthma; major depressive disorder; and headaches/migraines. *Id.* At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.*

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and found that plaintiff could perform sedentary work with the following limitations: she can frequently push or pull bilaterally; she can engage in occasional foot control operation with her left foot; she can occasionally climb ramps or stairs; she can never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, or crawl; she can occasionally reach overhead with her right upper extremity; she can frequently handle objects with her left hand; she should avoid concentrated exposure to extreme cold and extreme heat; she should avoid moderate exposure to irritants such as fumes, odors, dusts, gases, and poorly ventilated hazardous machinery, and unprotected heights; she can understand and carry out simple instructions; and she would be absent from work for less than two times per month as a result of her medical condition. (Tr. 15.)

At step four, the ALJ found that plaintiff was unable to perform any of her past relevant work. (Tr. 19.) At step five, the ALJ determined that plaintiff retained the residual functional capacity to perform jobs that exist in significant numbers in the national economy, including

document preparer, table worker, and stuffer. (Tr. 20.)  The ALJ therefore concluded plaintiff was not disabled. (Tr. 21.)

***Discussion***

Plaintiff argues that the ALJ erred by: (1) rejecting her subjective symptom testimony, and (2) improperly rejecting the lay testimony.  Plaintiff asserts that these alleged errors caused further error in the ALJ's RFC assessment and step five findings.

I.    Plaintiff's Testimony

Plaintiff first argues that the ALJ erred by rejecting her subjective symptom testimony. In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  the claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007).  General assertions that the claimant's testimony is not credible are insufficient.  *Id.*  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

At the administrative hearing plaintiff testified that she is in pain "all day long" due to fibromyalgia. (Tr. 48-49.)  She testified that she attempted to work for a friend for a year but was let go due to poor attendance. (Tr. 34.-35.)  Plaintiff explained that her attendance was poor

Page 5 – OPINION AND ORDER

due to fibromyalgia pain, difficulty breathing, and fatigue, stating that she "can't keep a job" due to her symptoms. *Id.* She stated that she did not know whether she would have the energy to perform work with a sit-stand option, but testified that she would be "outrageously in pain" if she worked a full eight hours at even an easy job. (Tr. 48-49.) In a statement to the Agency on December 10, 2011, plaintiff also reported constant pain, dizziness, and shortness of breath every day. (Tr. 176.)

The ALJ determined that plaintiff's testimony regarding the extent of her limitations was "not entirely credible." (Tr. 16.) First, she found that plaintiff made inconsistent statements about her symptoms and limitations. Inconsistencies within a claimant's statements constitute a clear and convincing reason for rejecting her testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ first noted that although plaintiff testified she stopped working in 2010 due to fibromyalgia and difficulty breathing, she reported on her application for SSI that she stopped working, in part, because her contract ended. (Tr. 16-17, 35, 166.) Plaintiff's physical therapist also notes that she stopped working due to pain from right shoulder injury sustained in 2009. (Tr. 17, 308.) The Court finds no inconsistency here. Plaintiff's application for SSI alleges multiple debilitating impairments that are not mutually exclusive; the application also states that plaintiff stopped working because her contract ended and because she was "already sick." (Tr. 166.) On this record, the reasons plaintiff ceased to work do not provide a clear and convincing reason for rejecting her credibility.

The ALJ also noted that while plaintiff testified that she rarely left her house because the sun caused her skin to blister, itch, and burn, plaintiff also reported that she went outside every two hours to get "fresh air." (Tr. 180.) Here, plaintiff gave testimony regarding her reaction to the sun at a much later date -- July 24, 2013 -- than the date she reported going out every two

Page 6 – OPINION AND ORDER

hours (December 10, 2011).  (Tr. 27-59, 180.)  This alleged inconsistency therefore provides little weight to the ALJ's credibility determination.  *Thomas*, 278 F.3d at 958.  In sum, inconsistencies within plaintiff's statements do not constitute substantial evidence supporting the ALJ's credibility finding.

The ALJ next found that plaintiff did not comply with treatment recommendations.  (Tr. 17.)  The ALJ may rely on unexplained or inadequately explained failure to follow treatment recommendations in her credibility determination.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  Here, plaintiff's medical providers noted on multiple occasions that she failed to comply with recommendations to quit smoking.  (Tr. 17, 18, 302, 307, 370.)  This Court has stated, however, that failure to stop smoking is not a clear and convincing reason for rejecting a claimant's testimony when there is evidence that the claimant has a severe nicotine addiction.  *See, e.g.*, *Jones v. Colvin*, Case No. 13-890-SI, 2014 WL 3579523, at *6 (D. Or. July 18, 2014).  In this case, the Court is satisfied that plaintiff's failure to quit smoking is adequately explained by evidence of her nicotine addiction.

The ALJ also asserted that plaintiff failed to establish an exercise routine for combating symptoms of fibromyalgia and asthma, despite repeated counseling by her primary care physician Fred Weisensee, M.D.  (Tr. 18, 275, 302, 307, 370.)  The record shows, however, that plaintiff performed range of motion exercises, worked with a physical therapist on a weekly basis, performed home stretching exercise, and attended exercise classes during the relevant period.  (*See* Tr. 306, 308, 316, 342, 346.)  The court therefore finds that plaintiff did not fail to follow recommendations to establish an exercise routine; thus, this alleged failure is not a clear and convincing to reject plaintiff's credibility.  *Tommasetti*, 533 F.3d at 1039.

The ALJ next noted plaintiff admitted to Darci Glass, PA-C that she did not comply with her medical provider's instructions to wear an immobilizer following shoulder surgery in July 2011. (Tr. 17, 306.) On the date this was recorded, however, Ms. Glass also indicated that use of an immobilizer was not needed. (Tr. 306.) The Court finds that because plaintiff's immobilizer was not needed, plaintiff's failure to wear the immobilizer is adequately explained and therefore does not constitute a clear and convincing reason for rejecting her testimony. *Tommasetti*, 533 F.3d at 1039.

Finally, the ALJ found plaintiff's testimony was not supported by the medical record. (Tr. 17.) While this is not, by itself, a clear and convincing reason to reject a claimant's testimony, it can provide additional support to the ALJ's credibility determination given other legally sufficient reasons for rejecting a claimant's testimony. 20 C.F.R. 416.929; *Thomas*, 278 F.3d at 959. Here, while plaintiff testified that she had severe headaches twice per week that caused her to vomit, her medical records contain little evidence of headaches. (Tr. 17, 38, 41.) While plaintiff's treatment records indicate that she denied having a headache on the date of one examination, the court can find no contradiction in the record. Plaintiff's headache condition is evident throughout her medical history. (Tr. 271, 331, 437, 445.)

In sum, the court finds that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's testimony. Therefore, the ALJ's credibility determination was not supported by substantial evidence in the record.

II.    Lay Testimony of Ellen Kuhns, Annette Belle, Raymon Kuhns, and Michael Vosgien

Plaintiff argues that the ALJ erred by rejecting the lay testimony of Ellen Kuhns, Annette Belle, Raymond Kuhns, and Michael Vosgien. The ALJ must provide "germane reasons" for rejecting the testimony of lay witnesses, and need not "clearly link his determination to those

Page 8 – OPINION AND ORDER

reasons." *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001); *see also Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

The lay evidence consists of third-party function reports and letters submitted to the Agency. Plaintiff's daughter Ellen Kuhns completed a third-party function report on December 11, 2011. (Tr. 185-92.) Ms. Kuhns stated that plaintiff takes two to three hours to start her day, and takes a nap as part of her daily routine. (Tr. 185-86.) She indicated that plaintiff alternately suffers from insomnia and "sleep[s] for days." (Tr. 186.) Ms. Kuhns wrote that plaintiff needs frequent rest, has pain from doing daily activities, and can walk only one block before needing to stop and rest for five to fifteen minutes. (Tr. 190.) Plaintiff's son, Raymond Kuhns, submitted a letter regarding plaintiff's functional limitations stating plaintiff "deals with a lot of pain that keeps her from being active." (Tr. 240.) Plaintiff's friend Michael Vosgien also submitted a letter in July 2013 stating "I see [plaintiff] in more pain now than ever and struggling to get up in the mornings." (Tr. 241.) Annette Bell, plaintiff's sister, stated that plaintiff was unable to work due to her condition. (Tr. 238-41.)

The ALJ's only reason for rejecting the lay testimony was that it "align[ed] with" plaintiff's testimony. (Tr. 19). When lay testimony mirrors a claimant's testimony in describing the nature and extent of her symptoms and limitations, the ALJ's reasons for rejecting plaintiff's credibility also constitute legally sufficient reasons for rejecting the lay testimony. *Molina*, 674 F.3d at 1122. Because the ALJ did not provide legally sufficient reasons for rejecting plaintiff's testimony, she also failed to provide legally sufficient reasons for rejecting the lay witness' statements.

\\\\\

\\\\\

Page 9 – OPINION AND ORDER

III.    Remand

Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this court. *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014).

> [The Ninth Circuit has] devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020. Ordinarily, if all three of these elements are satisfied, a district court must remand for a calculation of benefits. *Id.* If, however, "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the district court retains the "flexibility" to remand for further proceedings even when these elements are satisfied. *Id.* at 1021; *see also Burrell v. Colvin*, 775 F.3d 1133, 1141-42 (9th Cir. 2014) (remanding for further proceedings without analyzing whether the three factors are met "because, even assuming that they are, we conclude that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled"). Moreover, when remanding for further

development of the record, the district court has the discretion to remand on an open record or with the directive that the claimant's testimony be credited as true. *See Burrell*, 775 F.3d at 1142 (observing that a court's "flexibility" includes the option to "remand on an open record for further proceedings" (citing *Garrison*, 759 F.3d at 1021)).

Here, when the erroneously rejected evidence is credited as true, outstanding issues remain before a disability determination may be made. Because consultative physicians Michael Spackman, M.D., and Richard Alley, M.D., both found plaintiff capable of sustaining medium exertional work (Tr. 68-69, 79-80), the record as a whole creates serious doubt that plaintiff is, in fact, disabled. The court thus retains the flexibility to remand for further proceedings. *Garrison*, 759 F.3d at 1021. On remand, the ALJ must resolve the conflict between plaintiff's testimony, the lay opinion evidence, and the opinions of the consultative physicians.

### Conclusion

The Commissioner's decision is not supported by substantial evidence in the record, and it is therefore **REVERSED and REMANDED** for further proceedings consistent with this opinion.

DATED this _8th_ day of February 2016.

_____
JOHN V. ACOSTA
United States Magistrate Judge

Page 11 – OPINION AND ORDER